May it please the Court, I'm Scott Cronland for the Union. I'd like to try to preserve three minutes of my time for rebuttal. Sure. As this Court recognized in the Cayetano case, the Constitution generally prohibits the implementation of state legislation that would impair the obligations of a pre-existing contract, and the burden of justifying the impairment is even higher when the state itself is a party to the contract. In this case, the Union has two contracts with the Hawaii Health Systems Corporation that prohibit changes in conditions of work without mutual consent during the term of the agreement. And these are not one-off contracts. They're the product of a mature collective bargaining relationship that's gone on for decades. And the issue whether privatization would violate the language of these CBAs has come up before. The issue was resolved by an arbitrator and the Union won. The arbitrator, who heard testimony about the bargaining history, concluded that the agreements preclude privatization of work during the agreement if Hawaii law would not have allowed the work to be privatized. Who were the parties to that arbitration? The parties to that arbitration were UPW and a county that was... We've got a state in this case. We do have the state, but the Hawaii courts and the two holiday pay cases cited in our reply brief have concluded that the employers that are party to these multi-employer collective bargaining agreements, who bargain together as a group on one side of the table with the Union on the other, are in privity for purposes of issue preclusion and they're fairly charged with knowing how the agreements have been interpreted. But that arbitration award opinion also recognized that privatization is prohibited, I think it says, unless authorized by statute, right? No, actually... Almost in so many words. No, actually that arbitration decision, the 2002 Liebkubin decision, rejected the argument that privatization would be allowed because it was authorized by statute. Show me where it says that authorization by statute is insufficient, something like that. Is that what you're saying? That's what I'm saying. That at excerpts of record 869 to 70, the arbitrator recognized that the agreement was to quote, to protect the Union from legislation intended to abrogate the effect of the Kono case. And later in that arbitration decision, the arbitrator discusses Act 90, which the state had contended authorized the privatization at issue in that case. The state's argument in the arbitration was that a subsequent statute, Act 90, passed after our collective bargaining agreement, the then-existent collective bargaining agreement had been signed, allowed the privatization. And the arbitrator rejected that argument, saying that no, Act 90 was passed after we entered into our agreement. Why aren't they immune from suit in federal court? Well, there are two Eleventh Amendment arguments. There's the one they actually pled in their answer as their sixth affirmative defense, which is that they can't be sued based on state law, which we agree with, but we're not suing them based on state law. And then there's the Eleventh Amendment argument that's suggested by the Court's citation of the Ayers case and its order. That case simply holds that where the suit is in substance, a suit for specific performance, the suit will be treated as a suit against the state. But that's interpreted narrowly, as the Supreme Court made clear in the Georgia Railroad v. Redwine case. This isn't a suit for specific performance. HHSC is not a party to this lawsuit. This is a suit against a state official who is seeking to- That you allege violates the Contracts Clause. Yes, which is exactly- I had a question. You mentioned the Kono case, and there's a footnote. Well, I guess it's not a footnote. There's a statement in Kono that kind of leaves aside the question whether the Hawaii statute 89-9, excluding as a subject of bargaining, quote, And I think the question, as I understood it, that Kono was not deciding is that privatization is a matter of classification or reclassification, and therefore an impermissible subject of bargaining to begin with. What relevance does that statute have, if any, to our analysis? Well, the reason I don't think it's relevant is because the statute in question, 89.9d of the Hawaii revised statutes, was amended in 2007. And the amendment added a provision that says, This subsection shall not trump collective bargaining agreements entered into provisions in collective bargaining agreements that exist on and after January 1, 2007. So the statute itself, 89.9d, says that it doesn't trump the provisions of collective bargaining agreements. So the argument can't be made that somehow, because 89.9d doesn't allow this to be bargained, it trumps what we actually have in our contract. I'm not sure I understand your timing argument, because some of the things that are relevant happened before 2007, and some of them happened after. That is, the arbitration agreement happened before, which interpreted the text of the CBA, then in existence, to mean no privatization, that that was a violation of the terms of work section. But then the current contract is post-2007, so I'm not really sure I followed your timing. Sure. What I'm suggesting is that the statute, 89.9d, says that nothing in 89.9d trumps provisions in collective bargaining agreements that exist after January 1, 2007. And our current collective bargaining agreement provision exists right now and was entered into after 2007. Okay. So it can't preclude us. Would it otherwise apply? Is this a matter of classification or reclassification? No, it's not. Classification and reclassification deal with what job title someone has within the civil service. This isn't classification or reclassification. This is something that affects whether the bargaining unit members are going to have their jobs or it's going to be contracted out and they'll be turned into private employees. It's not one of the things listed in 89.9d as an impermissible subject of bargaining. The other question that I have for you is if we get to this point in the analysis, the government is entitled to impair a contract even under the contracts clause if there's an important, I'm paraphrasing, but if there's a very important public value to be served, there's a different phrase, it's necessary to fulfill something or another. But how does that standard play in this case? In other words, even if you get all the way to the end of the analysis, is there an important public purpose that is served by this statute that would permit the state to do what it's done notwithstanding everything else? Well, the impairment itself has to be reasonable and necessary, not just the three reasons why the state wouldn't be able to show it's justified. First, Act 103 itself doesn't have an implementation date. The statute itself doesn't require that the transaction close before our CBA ends. Second, the problem that Act 103 was intended to address was known when the CBA was signed. The state has been subsidizing the Maui facilities. When you say problem, you're talking about the budgetary problem. Yes. And third, there's no reason the state can't do this when our contract expires. We have only a year on our contract. We've suggested ways they could do this now, such as by leasing the employees to Kaiser or otherwise preserving in substantial part the provisions of our contract that allow people to accumulate pension credits, accumulate credits for retirement, accumulate retention points for the civil service. There are certainly ways to do this without impairing the contract of the UPW members. Is this a, you don't have to answer this if you don't want to, but is this a case in which our mediation unit could be of assistance to the parties? Well, Your Honor, the truth is that without our contract, we don't have the leverage to make this happen. When we had our contract and if we had our contract rights, we know this could happen when our contract is over. Without our contract rights, we don't have any leverage to make it happen. Do you have a state forum? If you don't, if for whatever reason the 11th immunity applies, could you sue them in state court? We could sue them in state court, but under state law, this is valid. If you're asking whether we could sue them under the contract clause in state court, I don't know whether they've waived sovereign immunity for the suit in state court. Probably we could. Is that a general waiver for breach of contract suits against the state? Well, we can't sue them for breach of contract. That's the problem. If we could take this to arbitration, the union could win in arbitration. We won in 2002, but as the court recognized in Cayetano, we can't enforce that award because under Hawaii law, this is legal. The legislature said so. That's the impairment is we can't go after them for breach of contract because they've regardless of what our contract says. By the way, this is just a matter of my curiosity, but in Hawaii, is Kaiser a unionized like it is here in California? There are unions that represent some of the Kaiser employees. Some or most? Well, they would represent the blue collar and staff employees, various unions in the Kaiser facilities, yes. But the workers here at UPW would lose the protections of the last year of the civil service contract. There are people who have been working towards civil service retirement. You talk about people, but you never say how many are involved in that category. Is it one, two, a dozen, 500? Well, there are more than 500 of our employees will lose their civil service positions. No, no, no. I mean, for instance, would lose pension vesting. How many employees? More than 30 will lose pension vesting, yes, according to the declarations filed by Mr. Lacanalua that are part of the record. Many more won't have enough retention credits to stay in the civil service. And then there are various milestones that qualify people for better retiree health care benefits. What about this, I guess you'd call it, effort by the state to sort of find slots in other government agencies besides the Health Services Corporation? Is that a viable, I don't want to say alternative, but viable mitigating factor? It's not realistic, as explained in the declaration that's filed as a document 13-3 in the Ninth Circuit record. There just aren't the other jobs. They've allowed people to apply for vacant civil service positions, not even to have the right, greater than anyone walking off the street to take them. There aren't 500 vacant civil service positions on Maui, and certainly not for certified nursing assistants. The only public hospital on Maui is the Maui Memorial Medical Center. There aren't jobs on Lanai. It's a tiny island for people trained in health care. This is a health care facility. These people are going to lose their civil service positions, even if they have the retention points. They would have to leave the island and try to fill, bump civil service positions elsewhere in Hawaii if they can. As a practical matter, there isn't an option of hundreds of vacant civil service positions sitting there on Maui. Is that going to happen a year from now anyway? Is that what you are telling us, what you told us? We don't dispute that when our agreement is over, we couldn't be making this contract impairment argument, but there is a huge deference to workers, whether it happens now or it happens a year from now, you know, for the people who lose their pensions or their health care or who have 23 retention points and therefore can't stay in the civil service, but will have 24 if they wait until the end of the contract. When exactly does the contract expire? June 30th of next year, of 2017. And when would the current plan go into effect? June 30th of 2016. So it's exactly a year. Exactly a year. And again, I'd note that Act 103 does not require that this be done on a particular date and that the contract itself with Kaiser, you know, acknowledges this lawsuit and have provisions that the closing can be delayed or put off if the court issues an injunction. Thank you, your honors. I see my time has expired. Thank you. Mr. Cronwood. Good morning. Your honors, may it please the court, my name is Doug Chen. I'm the Hawaii State Attorney General. With me is Deputy Attorney General Richard Thomason. We are here arguing on behalf of Hawaii State Governor David Ige. Thank you, General. Act 103 is Hawaii State Legislature's clear expression that the management and operation of public hospitals on the islands of Maui and Lanai be discontinued and transferred to a private entity. And to answer Judge Toshima's first question from the earlier argument, the concept or the statement that privatization, and I'm paraphrasing this, is unlawful unless authorized by law, that didn't come from the Libkuman arbitration decision, that came from Kono. That was the Hawaii Supreme Court saying that the legislature has the prerogative to... Well, it does unless it violates the federal constitution, which is the question that we're really here about. And I will actually, since opposing counsel was willing to answer this question, I don't know whether you are or not, and you don't have to, but it struck me, I really don't understand why this can't wait till the year has elapsed, and that would be consistent with the legislation, and it would avoid all this. Is this a matter that can be dealt with potentially by our mediation unit? I appreciate that. And to a certain extent, I would say even the lower court made an attempt to try to the federal court didn't have jurisdiction, but I think to that end, a couple of comments. I think one point about the idea of waiting a year is, first of all, that actually is what made me think about the question that came from the Ninth Circuit earlier to the parties when it was asking us to think about Ayers and Ellett. In other words, if we actually take that aside and say what we're really asking for is for the employees to be able to have a chance to work for the next year, that specific performance. Well, it isn't. Every contract clause case, it seems to me, has the same shape when the state is a party. It says we have a contract with the state, the legislature has passed a statute that impairs that contract, so we want an injunction against the implementation of the statute. And the effect in every such case is to leave in place an existing contract, and that doesn't make it a case for specific performance. The other party to the contract isn't even a party to this case. So how is this specific performance as distinct from saying the legislature passed something that it couldn't do, so we enjoin the effectiveness of that? Why is that specific performance? It doesn't have anything to do with a particular term of the contract. It's not directed towards the other party to the contract? I think because it's transforming this agreement, which is about the conditions of employment, into a promise of employment. It's telling them that we're going to- Well, if we bought your theory, there could be no contract clause case against a state that could be successful, because in every such case, the effect is to leave in place an existing contract with all of its various terms. I don't know if that's necessarily true, and that's because I think in Cayetano, that was an example where you were talking about a bargain for terms of employment that had to do with a payroll. Well, that begs the question of whether the particular thing that they're concerned about here is or is not a term of employment, but that's a merits question. That's not a jurisdictional question, because- If you don't mind, I thought I should try to answer your question in another way, so I appreciate your point. What is occurring right now in the state legislature, and I have no problem sharing all this, is that there are half a dozen bills that are pending right now that are trying to do exactly what's being described as what UPW wants. In other words, they're trying to talk about giving them more credits or allowing them to be able to purchase their time or take some sort of action that protects them in that way. I think some of the concerns that have occurred in testimony, and I'll be frank, it comes from the state, has to do with the fact that if, for example, employees are being leased back to a private entity, that it could actually impact our employee retirement system, either because of the tax implications or the requirements of the retirement system. Well, the policy questions are separate and apart from what we have to decide here. The first question is whether this is an ordinary contracts clause claim, that is, you passed a statute that you are not authorized by the federal constitution to pass, because it impairs an obligation of contract, and if we have jurisdiction, then what we do about the merits? And the policy questions really are not for us, but I appreciate your sharing that. Thank you. Are you saying that the legislature might fix this? Am I hearing what you're... I think that potential is there, and my suggestion to the court would be, in the court's absence of being able to decide this case, because it is matters of state law, the state legislature, there are avenues in which UPW can sit, either through... Venture prediction, how long it would take for them to either do it or not do it? The end of the legislature occurs in May, but in addition to taking the legislative... Sorry. What do you think about us staying the case until May 31st or something like that, pending a report from counsel, something like that? I don't think it's necessary in the sense that the court, at the threshold, as Judge of the lower court, doesn't have that sort of jurisdiction to be able to take on this case. Well, if the district court is wrong about that, what should we do? If the court is wrong, we would suggest that this court not find that this provision, section 14.01, is an incorporation clause. Of course, for a year, without an injunction, pending appeal, then you win anyway, right? No. And I'll tell you, I would say this is why. When the legislature, which our argument is that the civil service system is their creation, it's their decision, it's their public policy in terms of what they decide to do with the civil service system. And I think there are policy considerations that caused the legislature to make a decision to discontinue operations in Maui County now. For example, what is in the record is the fact that the Maui hospital system is losing $42 million. It's also the fact that the adolescent psychiatric ward at Maui Hospital was shut down in 2014. So as we're speaking right now, money is being lost, programs are being shut down. And so ultimately, if you're weighing the harm, which I think is overstated by UPW, to its workers versus the harm to Maui citizens. In what specific respect was it overstated? Sure. For example, only nine people have accepted placement into or out of the 500 physicians that are being consistently reported on the record to the court. This is how it actually breaks down. For UPW, there were RIF offers that were made. Only nine UPW employees accepted the RIF offer. And so the implication is that everybody else... Are you saying that... When you say the RIF offer, you mean to go to work for Kaiser? No, to remain within the Maui system, either through HHSC or through inter-jurisdictional agreements that have been reached with other portions of the state. Are you challenging the declaration that talks about the number of people who would lose their pension benefits and so forth? Are you saying that that's inaccurate? No, I think that's a different point. But in terms of the people who are actually losing their job or being required to leave the island, I think that is being overstated. In other words, I think the reality is Kaiser needs people to be able to work in its hospitals and it's exactly the people in that limited population... I'm afraid I didn't follow your answer and this is my fault, not yours, but if you're telling us that the legislature is working on a legislative fix for this and that it's likely to come, if it's going to come, within about six weeks, I'm not clear why we shouldn't just stay the case until the six weeks have expired and see if this is now moot or not. See if they've taken care of it. You know, I can understand the court's thinking behind that because I could see how the lower court was moving in that direction as well. In other words, there was a lag between the time that we argued the preliminary injunction motion until she finally issued her decision. I mean, if I could be candid, I think what the... Even beyond that, as you stand there, you can't tell us what the legislative solution is, can you? I mean, what is the solution that they're going to come out with? But what other, you say, two or three alternative solutions they're looking at? Can you tell us that? Oh, sure. One bill is allowing them to be able to purchase back more experience. Another bill is allowing them to be able to invest early. Everything that I'm saying comes with its own set of problems in terms of, you know, what that actually... How that affects, for example, the retirement system or how that affects, you know, whether or not we're, you know, offering public employees to do a private service at this point in time. I think that's... It's all... It's not as... I would be... It would be unfair for me to promise the court that bills are going to make it all the way through the legislature. I don't think that would be accurate. I think, ultimately, when Judge Gilmour was faced with the same... Was the same sense that UPW just needed to search for other ways to be able to resolve this. She eventually was able to rule on the case. That reminds me. Were these legislative solutions or legislative inquiries pending at the time Judge Gilmour decided the case? Yes, they were. So... The bills had been introduced. She was told, like we're being told, that, well, the legislature is working on a possible solution. Correct. And she eventually decided that, under the incorporation, that basically Section 14.01 was not an incorporation clause, therefore, there was no federal question, there was no federal matter. Unlike Judge Gilmour, we're now approaching a drop-dead date. They're going to adjourn by the end of May, and here we are almost mid-April. That's true. That's true. However, what I would suggest is that this is not UPW's only alternative. Not only is it not the correct path to take, but it's also the result of state courts. You know, that's not really our question. We're faced with a legal question and not a policy question. At least that's how I view it. And I guess my one question for you is whether the state has waived sovereign immunity for this claim in state court. We have not. So they could sue you in state court under the Contracts Clause, and you could not get that dismissed on a jurisdictional ground. Correct. In fact, I would dare say that within the options that are available, they have already filed a grievance. So this case, with a grievance that, in its content, looks just like the complaint, is also there. What is the status of the grievance? Where is it in the process? That was filed a few weeks ago, and so it should be going in front of an arbitrator. They also could file a prohibited practices complaint. Well, that's problematic because that relates to state law, which has been followed. There's no question that the state law is the state law. The question is whether it's prohibited under the federal constitution for that statute to go into effect. And you're saying that's a claim that they could bring in state court, the Federal Contracts Clause claim, in your view, can be brought in state court? No. Okay, well, I was surprised by your answer, but I wanted to be sure I understood it. Thank you for clarifying that. So this is their shot at that claim? This is their shot at the Contracts Clause claim, correct. However, in terms of privatization, being able to challenge whether or not that is allowed. Our submission is under CONO, under UPW versus Abercrombie. The correct venue to bring a privatization claim is in state court. Okay. And I know what your arguments are about the 2002 arbitration that said that this contract language does include a prohibition on privatization. Under Romaine, we are asking this court to not perpetuate one decision that was made by an arbitrator who was not a federal judge. This was... But bargaining history is never made by federal judges. It's made by the people who bargain and by arbitrators that interpret the contract for the parties. That's not always the case? Not only was the state not able to respond to the Lipkuman arbitration, but the state has never agreed. In fact, it has always taken the position that Section 14.01 means exactly what it says. I would strongly urge this court not to come to a decision that takes the plain meaning of that sentence and turns it into something else. I think all of us would agree, if we look at that sentence, that it is clearly talking about a preservation clause as opposed to incorporating the prior laws. Thank you very much. Okay. Thank you very much. Mr. Cromlin, you're out of time, but we'll give you another minute if you'd like for a rebuttal. First, I'd like to give the record citation for Judge Tashima. It's at ER 881-82, where the Lipkuman decision rejects the argument that a subsequent statute could authorize privatization. Second, I want to address briefly the essentially extra record arguments about the status in the Hawaii legislature and the efforts to ameliorate this. It's true that the Hawaii legislature could fix some of the substantial impairment through a different statute, but we don't have that statute. We're here and this statute and the implementation of it now is a violation of the contract clause. The same thing happened before Judge Gilmour in that the state came in and said, well, we really love the workers and we want to fix the problem and we'll figure out inter-jurisdictional transfers and maybe the legislature will deal with the problem. Absent a ruling from the court that this does violate the contract clause to implement the statute, that may not happen. The governor isn't supporting fixing the problem and if this court doesn't rule that this violates the contract clause, the problem may not be fixed. Are there ways that the problem could be fixed? Yes, we agree that there are ways that the problem could be fixed and we would certainly like to see the problems fixed. Thank you both counsel. The case just argued is submitted.
judges: Tashima, Silverman, Graber